EPHRAIM NUTE *vs.* HAMILTON MUTUAL INSURANCE COMPANY

A plaintiff, who, in a declaration against an insurance company on a policy issued by them by a name other than their own, " subject to the provisions, conditions and limitations of the by-laws of said company," avers that the policy was so issued, (which is admitted by the defendants in their answer,) is bound by the valid provisions of the charter and by-laws of the defendants.

A provision of a by-law of a mutual fire insurance company, to which their policies are expressed to be subject, that any suit on a policy shall be brought in the county where the company are established, is not binding on the assured.

ACTION OF CONTRACT by an inhabitant of the county of Suffolk against a mutual fire insurance company established at Salem in the county of Essex. The declaration alleged the making of a policy to the plaintiff by the defendants, " acting under the name and style of the Manufacturers' Insurance Company;" a loss by fire during the term of the insurance; due notice and statement of the loss, within three days after it happened; and that the defendants were bound by the terms of said policy to pay the plaintiffs the amount of the loss. The answer admitted the making of a policy of insurance, and the loss, as alleged in the declaration; and averred that the defendants, three days after

receiving the notice and statement of loss, proceeded, according to their by-laws, to ascertain and determine whether any loss had occurred for which the company were liable, and determined and voted that no such loss had occurred, and gave the plaintiff notice of such determination and vote ; and that the plaintiff should have commenced his suit within four months after such determination and vote, at a proper court in the county of Essex. This action was brought within said four months at a court of common pleas in this county.

At the trial in that court, the defendants' determination and notice thereof to the plaintiff were proved. And the policy was introduced, headed thus : " Manufacturers' Insurance Company. For insuring manufacturing establishments, machinery and goods against loss or damage by fire ; " and, in consideration of the payment of a certain premium, and of his subscription to a certain sum in " the capital stock of said company," and of a certain annual premium to be paid, insuring the plaintiff for the term and upon the property stated in the declaration, against loss or damage by fire, " subject to the provisions, conditions and limitations of the charter and by-laws of said company." The insurers were described throughout the policy as " said company," and the name of Hamilton Mutual Insurance Company did not appear on the face of the policy, except the single word " Hamilton " upon a scroll appended to an engraved coat of arms in the margin of the policy. Upon the back of the policy were printed the title and substance of the " act to incorporate the Hamilton Mutual Insurance Company," (*St.* 1852, *c.* 6,) and a set of by-laws, one article of which provided that the property insured by the company should be divided into four classes, called respectively " the Farmers' Insurance Company," " the Citizens' Insurance Company," " the Merchants' Insurance Company," and " the Manufacturers' Insurance Company ; " and the only other article of which that is material to be stated was the following :

"ART. 22. Upon notice of loss being given in the manner provided by the preceding section, the directors shall proceed, as soon as may be, to ascertain and determine if any loss

nas occurred for which the company is liable; and if they shall determine that the company is liable, then they shall also determine the amount of the loss, and shall pay the same within three months after such notice. But if the assured shall not acquiesce in their determination as to the liability of the company, or the extent of the loss claimed, the claim may be submitted to referees, if both parties shall consent thereto; or the assured may, within four months after any such determination, but not after that time, bring an action at law against the company for the loss claimed, which action shall be brought at a *proper court in the county of Essex*; and in case any suit or action shall be commenced against said company after the expiration of four months as aforesaid, the lapse of time shall be taken and deemed as conclusive evidence, in any court of law or chancery, against the validity of the claim thereby so attempted to be enforced. And if the plaintiff shall not recover, before referees or in his action at law, a greater sum than the amount which had been determined by the directors, the company shall recover their costs, and execution shall issue for the balance in favor of the party entitled to it."

*Bishop*, J. ruled that this action could not be maintained, because not brought in the county of Essex; and the plaintiff submitted to a verdict against him, and alleged exceptions to this ruling.

*S. J. Thomas*, for the plaintiff.

*R. Choate, O. P. Lord & J. W. Perry*, for the defendants, submitted a restatement in writing of their argument in the case of *Amesbury* v. *Bowditch Mutual Fire Ins. Co., post*, 600.

SHAW, C. J. The defence to this action, on a policy entered into by a mutual fire insurance company, is, that by the terms of the policy the contract was that the suit should be brought at a proper court in the coun'y of Essex, within four months after the determination by the directors that nothing was due to the plaintiff upon the loss claimed. By a comparison of dates, it appears that this suit was brought within four months; but it was brought in the county of Suffolk, and not in the county of Essex; and on that ground the court of common pleas held

that the action could not be maintained.    The correctness of that ruling is the sole question now presented to this court.

In cases recently determined, it has been held that a stipulation in a policy of insurance, or in a by-law constituting in legal effect a part of such policy, by way of condition to their liability, that no recovery shall be had unless a suit is commenced within a certain time limited, was a valid condition, and that, unless complied with, the plaintiffs were not entitled to recover.    *Cray* v. *Hartford Fire Ins. Co.* 1 Blatchf. C. C. 280.    *Wilson* v. *Ætna Ins. Co.* 27 Verm. 99.*    In this case it is strenuously insisted that a stipulation, that an action shall be brought in a particular county, where by law it may be brought, is strictly analogous, and ought to be enforced as a condition precedent by a court which, without such stipulation and condition, would clearly have jurisdiction of the subject matter and of the parties.

A preliminary objection is taken here, in the argument for the plaintiff, that the plaintiff is not bound by the by-laws annexed to the policy, because they are not in fact and do not purport to be the by-laws of the Hamilton Insurance Company, but of another corporation denominated the Manufacturers' Insurance Company.    This is founded on the peculiar and remarkable form of this policy.    The policy appears throughout to be the act of the Manufacturers' Insurance Company, which would seem to be another corporation; and the name of the Hamilton Company nowhere appears in the policy, except the single word " Hamilton " on a symbolical device on the face of the policy in the form of a coat of arms.    And it is true that, on the face of the policy, the terms " by-laws of said company " would appear to mean those of the Manufacturers' Company; and so the term " said company " is used throughout the instrument.

But the decisive answer seems to be, that unless the Hamilton Company are the corporation with whom the plaintiff contracted, he has no cause of action, and the argument for the plaintiff would state his case out of court.    The plaintiff, in his decla-

---

\* S. P.   *Amesbury* v. *Bowditch Mutual Fire Ins. Co., post,* 596.

ration, avers that the defendants, by the name of the Manufac-
turers' Insurance Company, made the policy. If so, they have
simply adopted another name as the designation of the Hamil-
ton Company; and then it follows that the "said company"
means the company contracting, and "their by-laws" are those
of the Hamilton Company, in reference to and conformity with
which the contract on both sides was made. The Hamilton
Company admit this policy to be their contract, but deny the
breach; and this is the issue with them, in which the plaintiff
joins.

The cause of this peculiar form of policy, on taking the policy
and by-laws together, appears plainly enough; the by-laws di-
rect that the risks of the Hamilton Company shall be divided
into four classes, to be called "the Farmers'," "the Citizens',"
"the Merchants'" and the "Manufacturers' Insurance Com-
pany"; so that in effect this is the policy of the Hamilton Com-
pany, insuring the plaintiff's property in that class of risks called
the Manufacturers' Insurance Company; and the name used in
the policy does not designate a corporation, but a class of risks
in the Hamilton Company. It seems to be an inconvenient and
awkward arrangement, by which, in the form of their contracts,
they renounce their own corporate name, usually the very test
of corporate identity, and adopt what, on the face of it, would
appear to be the name of another corporation. But when the
plaintiff alleges that the Hamilton Company did thus make
this contract by such name, that the policy annexed is their
policy, regardless of the name; and the defendants, being served
with process, come into court and admit it, and tender an issue;
and the plaintiff takes issue with them on the question of breach
and damages; no question is presented to this court on the sub-
ject. It follows conclusively that the policy being the act and
contract of the Hamilton Company, the charter and by-laws of
"the said company," referred to in the policy, are their charter
and by-laws, and are those stated at length on the back of said
policy.

It is the Hamilton Mutual Insurance Company, of which the
plaintiff, by force of his application and by the acceptance of

his policy, became a member, with the usual rights and powers of a corporator. By this fact, as well as by the definite reference in the policy itself, we think the plaintiff as well as the defendants were bound; and their rules are to be regarded, in construing the policy, as if they were embodied in it. The clause in the policy is, that the company do promise and agree to insure him against loss or damage by fire, "subject to the provisions, conditions and limitations of the charter and by-laws of said company."

The provision on which this defence depends is found in art. 22d of the by-laws. After providing that notice of loss shall be given, and that thereupon the directors shall proceed to determine whether any loss has occurred for which the company are liable, and if so, ascertain the amount, it provides that, if the assured do not acquiesce in such determination, as to the liability or the extent of it, and both parties do not agree to refer, as they may, " the assured may, within four months after such determination, but not after that time, bring an action at law against the company for the loss claimed, *which action shall be brought at a proper court in the county of Essex.*"

Here are no negative words, and, strictly speaking, no stipulation that the action shall not be brought elsewhere, unless they are implied by the term " shall be brought" in Essex. These words were not necessary to give the assured a remedy, because without them it is conceded that they would have a remedy at common law, as in all cases of breach of contract, for which no stipulation is necessary. In this respect, the case differs essentially from that of *Boynton* v. *Middlesex Mutual Fire Ins. Co.* 4 Met. 212. There it was provided by the act of incorporation, which has all the force and effect of a general law, that in case the directors should find the company liable and award a certain sum, and the assured should not acquiesce, but be dissatisfied with the amount, the action should be brought in the county of Middlesex. In such case, the action to be brought was in the nature of an appeal from the decision of the directors, as in a case of allowance or disallowance of a debt by commissioners of insolvency on the estates of deceased persons, or, under the insolvent

laws, in the case of a claim against a living insolvent debtor; and the legislature might rightfully regulate the time and mode of entering and prosecuting such appeal; and, as the law gave a new and specific right in such case of dissatisfaction with the amount awarded, and pointed out a specific remedy, by a well known rule of law, the specific remedy must be pursued. But it was also held, in that case, that as the directors had determined that the company were not liable and had awarded nothing, it was not the specific case of the statute, and that the assured were remitted to their remedy at law, by action in either of the counties where, by the general law, it might be brought.

Upon the particular question here presented, the court are of opinion that there is an obvious distinction between a stipulation by contract as to the time when a right of action shall accrue and when it shall cease, on the one hand; and as to the forum before which, and the proceedings by which an action shall be commenced and prosecuted. The one is a condition annexed to the acquisition and continuance of a legal right, and depends on contract and the acts of the parties; the other is a stipulation concerning the remedy, which is created and regulated by law. Perhaps it would not be easy or practicable to draw a line of distinction, precise and accurate enough to govern all these classes of cases, because the cases run so nearly into each other; but we think the general distinction is obvious.

The time within which money shall be paid, land conveyed, a debt released, and the like, are all matters of contract, and depend on the will and act of the parties; but, in case of breach, the tribunal before which a remedy is to be sought, the means and processes by which it is to be conducted, affect the remedy, and are created and regulated by law. The stipulation, that a contracting party shall not be liable to pay money or perform any other collateral act, before a certain time, is a regulation of the right, too familiar to require illustration; a stipulation, that his obligation shall cease if payment or other performance is not demanded before a certain time, seems equally a matter affecting the right. A stipulation, that an action shall not be brought after a certain day or the happening of a certain event, although.

in words, it may seem to be a contract respecting the remedy yet it is so in words only; in legal effect, it is a stipulation that a right shall cease and determine if not pursued in a particular way within a limited time, and then it is a fit subject for contract, affecting the right created by it.

But the remedy does not depend on contract, but upon law, generally the *lex fori*, regardless of the *lex loci contractus*, which regulates the construction and legal effect of the contract.

Suppose it were stipulated in an ordinary contract, that in case of breach no action shall be brought; or that the party in default shall be liable in equity only and not at law, or the reverse; that in any suit to be commenced no property shall be attached on mesne process or seized on execution for the satisfaction of a judgment, or that the party shall never be liable to arrest; that, in any suit to be brought on such contract, the party sued will confess judgment, or will waive a trial by jury, or consent that the report of an auditor appointed under the statute shall be final, and judgment be rendered upon it, or that the parties may be witnesses, or, as the law now stands, that the plaintiff will not offer himself as a witness; that, when sued on the contract, the defendant will not plead the statute of limitations, or a discharge in insolvency; and many others might be enumerated; is it not obvious, that, although in a certain sense these are rights or privileges which the party, in the proper time and place, may give or waive, yet a compliance with them cannot be annexed to the contract, cannot be taken notice of and enforced by the court or tribunal before which the remedy is sought, and cannot therefore be relied on by way of defence to the suit brought on the breach of such contract?

We do not mean to say that many of these are stipulations which it would be unlawful to make, or void in their creation, if made on good consideration, or that they do not become executory contracts upon which an action would lie, and upon which damages, if any were sustained, might be recovered. Still they would not be conditions annexed to the contract, to defeat it if not complied with, and so to be used by way of defence to an action upon 't.

This seems to have been the distinction taken in the latest English case cited at the bar. *Livingston* v. *Ralli,* 5 El. & Bl. 132. The point decided there was, that, though an agreement to submit a difference arising on a contract to arbitration is not a good plea in bar to an action on such contract, the breach of it may be a good ground of action.

It is true that a covenant never to sue after the breach of a contract, though a stipulation respecting the remedy to be pursued, may be allowed as a bar to an action upon it; but this is upon the ground that a covenant never to sue is, in legal effect, equivalent to a release, and, to avoid circuity of action, may be pleaded by way of release.

The distinction between that which is matter of contract and may be a proper subject of consideration, to be applied in expounding it, making it what it is, and to be applied to the construction of it, whenever and wherever it is to be enforced; and that which is matter of remedy regulated by law, the law of the place where the remedy is sought, is recognized and stated in an early case of our own. *Pearsall* v. *Dwight,* 2 Mass. 84.

Supposing then the rule to be well settled by principle and authority, that a stipulation is valid which provides that no action shall be brought unless commenced within a specified time, which appears to us to be equivalent to a condition in the contract, that all liability shall cease and determine unless the claim upon it is made by an action within the time limited, and attaches to the contract itself, still, in our opinion, there is not such an analogy between that and the stipulation as to the forum in which a suit shall be commenced, that the one can be taken as an authority for the other. Upon the grounds stated, we think the two cases stand upon very different reasons.

Supposing the words in the by-law, " which action shall be brought at a proper court in the county of Essex," be deemed equivalent to a negative provision, that no action shall be brought in any other county—of which we give no opinion—we are not aware of any authority bearing upon the question that such stipulation or condition can be regarded as a condition of the contract, or that a noncompliance with it will be a defence to

the action before a court having jurisdiction of the subject matter and of the parties.

In recurring to the full and elaborate written argument of the defendants' counsel, we find no authority upon this part of the case. In referring to the case of *Boynton* v. *Middlesex Mutual Fire Ins. Co.* 4 Met. 212, which we have already alluded to, it is urged, on the authority of *Holden* v. *James*, 11 Mass. 396, in which a special statute of limitations, (which was a strictly private act,) was held unconstitutional, that the ground on which the court decided must have been the contract of the parties, and not the law of the land. But the court, in 4 Met. 215, cite Rev. Sts. *c.* 2, § 3, directing that all acts of incorporation shall be deemed public acts. If so, they are the law of the land, controlling, and, as far as they go, repealing other public acts. Whether this ground was correct or not, it was that on which the court decided, and the case therefore is not an authority for giving a like effect to matters of mere contract.

In a certain sense, all persons are said to be parties and assent to the laws of the government to which they owe allegiance; such laws are binding on them, and enter into and make part of every agreement which such persons make. But we are speaking of the known and familiar distinction between contracts between parties *in pais*, which are binding on them because they have so agreed; and duties created by law, which are binding on the parties because they are law, and do not derive their force from contract.

A party is barred by the statute of limitations, not because he has so agreed, but because such is the positive law, the *lex fori*, the aid of which he is seeking to obtain his rights. So of arrest of the person, sequestration of goods, levy on lands, and the like; the plaintiff does not derive his right to the use of these means from the agreement of the contractor, but from the positive law which gives him the remedy, and the means of obtaining satisfaction, incident thereto.

Most of the cases cited, both English and American, are conditions annexed to the contract; such as bringing the action within a certain time, procuring certificates of churchwardens,

magistrates or others, practising no fraud, making seasonable and true representations of loss, and the like; as such, they are modifications of the contract, not of the remedy.

We place no great reliance upon considerations of public pol icy, though, as far as they go, we think they are opposed to the admission of such a defence. The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the symmetry of the law, and interfere with such convenience. Such contracts might be induced by considerations tending to bring the administration of justice into disrepute; such as the greater or less intelligence and impartiality of judges, the greater or less integrity and capacity of juries, the influence, more or less, arising from the personal, social or political standing of parties in one or another county. It might happen that a mutual insurance company, in which every holder of a policy is a member, and of course interested, would embrace so large a part of the men of property and business in the county, that it would be difficult to find an impartial and intelligent jury. But as already remarked, these considerations are not of much weight. The greatest inconvenience would be in requiring courts and juries to apply different rules of law to different cases, in the conduct of suits, in matters relating merely to the remedy, according to the stipulations of parties in framing and diversifying their contracts in regard to remedies.

The law fixing the rate of interest is cited as an illustration of the point, that, though the law has fixed the rate of interest, yet parties may vary it by contract, and take a less interest. Undoubtedly they may. But take the whole statute together; what are its objects? Manifestly two; first, to fix a rate of interest where the parties have made no agreement as to the rate; secondly, to fix a rate beyond which a creditor cannot take or receive interest with impunity. The contract is not void, as formerly; but the creditor suffers a penalty for it. These objects are effectually accomplished by the provisions of the statute; and no more. Rev. Sts. *c.* 35, § 2. *St.* 1846, *c.* 199. Of course it is

not repugnant to these provisions, for parties to' fix a rate of interest by agreement, within this limit. This has no analogy to the present question.

There being no authority upon which to determine the case, it must be decided upon principle. The question is not without difficulty, but, upon the best consideration the court have been able to give it, they are of opinion that it is not a good defence to this action, that it was brought in the county of Suffolk and not in the county of Essex; and therefore that the exceptions must be sustained, the verdict set aside, and a new trial granted.