**Zylpha CLINTON and Lloyd J. Boggio, as Trustee under Deed of Settlement T 5062, Plaintiff,**

v.

**Richard JANGER, et al., Defendants.**

**No. 82 C 7046.**

United States District Court, N.D. Illinois, E.D.

March 21, 1984.

John I. Grossbart, Stanley J. Adelman (A), James F. Holderman, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiff.

Robert G. Krupka, Richard H. Schneider, Chicago, Ill., for Paget-Brown.

Gary L. Prior, Daniel P. Shapiro, McDermott Will & Emery, Chicago, Ill., for Lion Corp. Ltd.

Stephen J. Sptiz, Bruce S. Sperling, Eugene J. Frett, Sperling, Slater & Spitz, Chicago, Ill., for Janger.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiffs Zylpha Clinton ("Clinton") and Lloyd J. Boggio ("Boggio"), respectively the beneficiary and trustee of a trust, claim that the defendants have violated the provisions of several trusts and their duties thereunder. Specifically, the plaintiffs allege violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1976), and violations asserted pursuant to the Court's diversity jurisdiction: common law fraud, misappropriation, conversion, conspiracy and breach of trust and fiduciary obligations. Subject matter jurisdiction is asserted pursuant to 18 U.S.C. § 1964 (1976) and 28 U.S.C. § 1332(a) (1976).

### Parties

The complaint, briefs and affidavits filed relative to the instant motion allege the following. Clinton is the beneficiary of the trusts under consideration. She is a resident and citizen of the State of Florida. Boggio is the present trustee. He is also a resident and citizen of the State of Florida.

Defendant Janger ("Janger") is a lawyer who, while employed by the firm of Levenfeld, Kanter, Baskes and Lippitz ("Levenfeld"), represented Clinton in connection with the administration of the first trust agreement. Janger is a resident and citizen of Illinois.

Another attorney, Jerry Biederman ("Biederman"), subsequently represented Clinton in connection with the administration of the trusts. Biederman was an associate of and subordinate to Janger at Levenfeld. Biederman is not a party to this suit.

Defendant Lion Corporation ("Lion") is a former trustee of one of the trusts. It is a trust corporation incorporated under the laws of the Caymen Islands, having its principal place of business in the Caymen Islands, British West Indies. Lion is owned and managed by defendant Ian Paget-Brown ("Paget-Brown").

Defendant Siskin Corporation ("Siskin") is also a former trustee of one the trusts. It is a trust corporation incorporated under the laws of the Channel Islands, having its principal place of business in Jersey, Channel Islands. Siskin too is owned and managed by Paget-Brown.

Paget-Brown is a British subject who resides in Grand Caymen, Caymen Islands. He is a lawyer and the owner and managing agent of Lion and Siskin.

Defendant Guiness Mahon Guernsey Limited ("GMG") is a banking corporation in which the trust assets were deposited at one time. It is incorporated under the laws of the Channel Islands, having its principal place of business in Guernsey, Channel Islands.

Defendant Bayeux Trustees Limited ("Bayeux") is a former trustee of one of the trusts. It is a trust corporation incorporated under the laws of the Channel Islands, having its principal place of business in Guernsey, Channel Islands.

Presently pending are the motions to dismiss of the defendants Paget-Brown, Lion, Siskin, GMG and Bayeux. Each has moved to dismiss the action pursuant to Fed.R. Civ.P. 12. The defendants contend that the Court lacks jurisdiction on three grounds: (1) the various forum selection clauses contained in each trust agreement preclude the Court from exercising jurisdiction over the defendants; (2) the Court lacks personal jurisdiction over each defendant due to insufficient contacts in this District; and (3) this Court is inconvenient under the doctrine of *forum non conveniens.*

### Facts

The first trust ("Trust One") was executed on February 1, 1968, naming Clinton as its beneficiary and Castle Trust Company Limited ("Castle") as trustee. Trust One was established under Bahamian law and contained a forum selection clause which provided that

> The rights of all parties and the interpretation, construction and effect of each and every provision hereof shall be subject to the exclusive jurisdiction of and construed and regulated according to the laws of the Bahama Islands which shall be the forum for the administration thereof.

During 1975, Paget-Brown arranged for the incorporation of Lion for the purpose of succeeding Castle as trustee under Trust One. These arrangements were made at the request of a Levenfeld attorney. In January, 1976, Castle resigned as trustee, with Clinton's consent. Lion succeeded Castle as trustee of Trust One in February, 1976.

In November, 1979, Clinton allegedly requested that Levenfeld replace Lion with a trustee that was not affiliated with Paget-Brown. Subsequently, either Janger or Paget-Brown allegedly told Biederman that the trusteeship had been transferred from Lion to Bayeux. Bayeux is not affiliated with Lion. But Bayeux was not named trustee at that time. Instead, the trusteeship apparently was transferred in November, 1979 from Lion to Siskin. Siskin is another trust company owned and operated by Paget-Brown. There is no indication from the facts alleged that either Biederman or Clinton was advised of the true nature of the transfer. Incident to the transfer to Siskin, a second trust agreement ("Trust Two") was drafted. The Court is not advised of who, if anyone, executed Trust Two. Trust Two contained a forum selection clause similar to that in Trust One, except that it made Jersey, Channel Islands the applicable law and forum. The trust assets allegedly were deposited with GMG in the Channel Islands.

In October, 1980, Biederman learned of the allegedly improper transfer of Trust One from Lion to Siskin. Biederman executed a consent and release. Siskin was released of all liability for Trust Two and the impending transfer from Siskin to Bayeux was made retroactive to November, 1979. The consent and release allegedly occurred without Clinton's knowledge.

In December, 1980, Bayeux drew up a third trust agreement to formally transfer the trust from Siskin to Bayeux ("Trust Three"). Clinton was asked to execute this agreement in February, 1981. It was at this time that Clinton claims to have become aware of Trust Two, the intermediate transfer to Siskin. Eventually Clinton signed the Trust Three documents. In June, 1981, Bayeux became the new trustee. Trust Three contained a forum selection clause similar to those contained in the first two trust agreements, except that it made Guernsey, Channel Islands the applicable law and forum.

## Discussion

In bringing their motions to dismiss, each defendant contends that this Court lacks jurisdiction because one or more of the forum selection clauses contained in the three trust agreements should be enforced, and this case transferred from the United States District Court for the Northern District of Illinois. The plaintiffs, however, deny the applicability of any of the clauses, claiming that: (1) the subject matter of this lawsuit does not fall within the scope of any clause; (2) the simultaneous enforcement of all three clauses would be unreasonable; and (3) only parties to the agreements may take advantage of the clauses.

### (1) Subject Matter of Dispute

In order to enforce any or all of the forum selection clauses, the Court first must determine that the subject matter of the dispute is one contemplated under the terms of that clause. The wording of the three clauses is identical but for the place named: "[t]he rights of all parties and the interpretation, construction and effect of each and every provision hereof shall be subject to" the laws of a designated place. The plaintiffs argue that the clauses are binding only on disputes arising from the interpretation of the trusts, while the defendants claim that the clauses also control tortious conduct which might arise from misfeasance or malfeasance in the administration or execution of any of the trusts.

In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), the plaintiff, a New Jersey steel fabricator, contracted with a British corporation for a plant to be built in New Jersey. The British corporation then contracted ("Contract II") with another British corporation to build a component of the New Jersey plant. Contract II provided that "[t]hese conditions shall be construed in accordance with English law. In the event of *any* dispute arising the same shall be determined by the English Courts of Law." (emphasis added). 709 F.2d at 193. When a dispute arose be-tween the parties to Contract II, the plaintiff sought to assert both contract and tort claims against the defendant in the United States District Court for the District of New Jersey. The defendant moved to dismiss, arguing that the forum selection clause in Contract II provided that all disputes were to be settled in England. The plaintiff responded that the forum selection clause was inapplicable since the plaintiff had asserted tort claims, whereas the forum selection clause contemplated only resolution of contractual disputes.

The Third Circuit held that there was "no evidence suggesting that the clause in Contract II was not intended to apply to all claims growing out of the contractual relationship. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims ...." 709 F.2d at 203.

Other courts have enforced "general" forum selection clauses so as to subsume within a clause's coverage both contract and tort claims. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 508, 94 S.Ct. 2449, 2451, 41 L.Ed.2d 270 (1974) ("The parties agree that if any controversy shall arise out of this agreement or the breach thereof ...."); *M.S. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 2, 92 S.Ct. 1907, 1909, 32 L.Ed.2d 513 (1972) ("Any dispute arising must be treated before the London Court of Justice"); *Bense v. Interstate Battery System*, 683 F.2d 718, 720 (2d Cir. 1982) ("[T]he exclusive venue of any suits or causes of action arising directly or indirectly from this AGREEMENT shall be in Dallas County, Texas"); *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 793 (7th Cir. 1981) ("[A]ny difference arising out of this Agreement or the operations thereunder ..."); *Hoes of America, Inc. v. Hoes*, 493 F.Supp. 1205, 1206 (C.D.Ill.1979) ("Any court procedures shall be held in Bremen [Germany]").

This Court also finds that the forum selection clauses under consideration here can be interpreted to permit resolution of contract *and* tort claims arising under the

various trusts. Each clause specifies that the "the interpretation, construction and effect of each and every provision hereof shall be subject to" a distinct jurisdiction's law. The trusts also provide that the "rights of all parties" will be subject thereto. Clearly the three clauses do not expressly assert an intention to limit disputes to contract claims. The only apparent limitation is that parties' rights must be compromised in order to seek relief. Certainly alleged violations of the rights of some parties to the trust agreements are in dispute. An example is Clinton's claim that the transfer of trusteeship from Lion to Siskin without her consent and contrary to her request was malfeasant and violative of her rights as a beneficiary. In contrast, Lion contends that when the transfer occurred Lion was acting in accordance with its delegated powers as trustee. In order to resolve that particular dispute, some court must analyze the face of the agreement to determine what powers were granted to which parties. Since the nature of the plaintiffs' complaint centers around the administration of the trusts, "the interpretation, construction and effect" of certain provisions is mandatory as a predicate to determining tort liability. No one disputes that the trusts expressly delegate to a foreign forum the responsibility for analyzing the interpretation, construction and effect of a trust. This Court does not have that power.

### (2) Reasonableness of Enforcement

■ The next question is whether the enforcement of one or all of the clauses is reasonable. Historically, a forum selection clause was *per se* invalid on the ground that it attempted to oust one court of its jurisdiction. *See Nute v. Hamilton Mutual Insurance Co.*, 72 Mass. (6 Gray) 174 (1856). However, since the landmark decision in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), a forum selection clause generally is valid unless proven to be unreasonable. *See also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). This is especially true in the con-

text of international contracts, where special deference is owed to forum selection clauses. *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 795 (7th Cir.1981). The party resisting enforcement of the clause bears the burden to prove its unreasonableness. *Bremen v. Zapata Off-Shore Co.*

■ *Bremen*, and many other cases, deal only with a choice among two possible forums. In the present case, there are three possible choices, not including this District. The plaintiffs argue, in effect, that unreasonableness is established *a priori* because three distinct forums are suggested by the various trusts such that claims against Lion and Paget-Brown could be litigated only in the Bahamas or Jersey, Channel Islands, those against Siskin in Jersey, Channel Islands, and those against GMG and Bayeux in Guernsey, Channel Islands. That argument is unpersuasive.

First, even assuming that the Court could now determine, for example, that the Guernsey court would not assert jurisdiction over Paget-Brown, such a finding is not tantamount to a finding that Guernsey is an unreasonable forum. No litigant in this country is guaranteed the ability to accumulate all possible claims from a related series of occurrences in a single court. The gatekeeping effect of the jurisdiction (subject matter and personal) and venue laws often forces a plaintiff to sue in multiple states or in the federal and state courts within the same state. In fact, if this suit were to remain within this District, several of the defendants, among them Paget-Brown, have argued that no jurisdiction exists over them here due to insufficient contacts. If that is true, the plaintiffs either would have to split their suit among at least two courts or forego some of their claims against certain defendants.

Second, Clinton herself agreed, in effect, that two different foreign forums might become the places of dispute resolution, *i.e.,* if claims alternatively or simultaneously were raised under Trusts One and Three. It is undisputed that Clinton sought to change the trustee under Trust One, al-

though what law and forum Clinton intended to apply after the change is unknown. It is possible that she contemplated only a change in trusteeship and not in forum. The transfer, albeit allegedly in contravention to Clinton's instructions and rights, resulted in Trust Two. That trust was dissolved. Finally, the trust came to rest, with Clinton's approval, on Bayeux and provided that Guernsey, Channel Islands was to be the forum for dispute resolution.

The only decision to be made now is whether any alternative forum is reasonable, not specifically whom can be brought into the forum finally chosen. If there is at least one foreign forum which is reasonable, the dispute should not be prosecuted in this District. The plaintiffs will remain free to reinstitute proceedings in that foreign forum, or anywhere else that they believe is proper. Whether there is jurisdiction over all defendants in the foreign forum selected by the plaintiffs will be a question for that court to decide.

■ In determining whether a contractual clause is reasonable in a particular situation, the guidelines that have been considered are: (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; and (4) the location of the parties and witnesses participating in the litigation. *Furbee v. Vantage Press, Inc.,* 464 F.2d 835, 837 (D.C.Cir.1972). Additional factors are: (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. *Bremen v. Zapata Off-Shore Co.,* 407 U.S. at 16, 92 S.Ct. at 1916.

■ In the present case, the first relevant factors are the residency and location of the parties and witnesses. Of the parties and potential witnesses, it is alleged that six reside in the United States: Kanter (Levenfeld), Janger and Biederman reside in the Chicago area; the plaintiffs and Clinton's husband reside in Florida. Of the remaining potential witnesses, five allegedly are located in the Channel Islands, two in London, and six in the Caymen Islands.

Thus, the party and witness population is dispersed, with no single jurisdiction offering a distinct advantage over the other.

The second relevant factor is where the trust agreement was executed and to be performed. Each trust was executed in the forum designated in that trust for dispute resolution. Trusts One and Two apparently were to be performed in those same forums. It is likely that Trust Three was to be performed in Guernsey, the place of execution.

Probably the most influential factor is the convenience or inconvenience to the parties of litigating in any of the foreign forums. The trust initially was created outside of the United States for the tax advantage it offered Clinton. To fulfill this purpose, each trustee agreed with Clinton's representative that complete confidentiality would surround the trust and that all of its administration would take place outside of the United States. While there may be certain advantages to the plaintiffs inherent to a forum in the United States, Clinton bargained in at least two of the three agreements for a forum outside this country. Thus, she knew of the potential inconvenience and any prejudice from the very beginning.

Finally, there is no evidence that the first and third trusts were the products of unequal bargaining. *See Bremen v. Zapata Off-shore Co.,* 407 U.S. at 16, 92 S.Ct. at 1916. Although Clinton allegedly did not bargain at all for Trust Two, the place selected for dispute resolution therein is not so different than the place she agreed to in Trust Three, *i.e.,* Jersey, Channel Islands versus Guernsey, Channel, Island.

Nor will the plaintiffs effectively be deprived of their day in court if the Northern District of Illinois is closed to them for this matter. Instead, the plaintiffs may bring at least some part of their dispute under the laws of the Bahamas or the Channel Islands.

### (3) Enforceability by Non-Parties

The plaintiffs contend that even if any of the three forums is selected, only parties to

the relevant trust may take advantage of the forum selection clause. In their view, Paget-Brown and GMG, non-parties to any trust, cannot press for the enforcement of any clause and are not bound thereto.

 The Court is unimpressed by that argument. First, if, as here, a party to a trust moves to enforce a forum selection clause, it is irrelevant that a non-party to that trust joins in the motion.

Second, the cases hold that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses. *See, e.g., Costal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). This is especially true where the non-party is a third party beneficiary of the disputed contract and it is foreseeable that dispute resolution would occur in a foreign jurisdiction.

In the present case, although Paget-Brown is sued in his individual capacity, the plaintiffs repeatedly refer to him in his capacity as director, attorney and owner of Lion and Siskin. No other claims have been made against him. Due to his capacity, Paget-Brown clearly was a foreseeable third party beneficiary of Trust One and Trust Two. In creating the trust companies, Paget-Brown anticipated that any disputes would be settled outside of the United States under some foreign law.

Similarly, GMG arguably relied on and was subject to the terms of Trust Two. It too anticipated that any disputes would be settled outside of the United States, under foreign law. Each of those entities has a right to move for adherence to the relevant forum selection clause. Theoretically, each can be held liable for any allegedly improper acts thereunder.

In conclusion, at least one, if not all, of the forum selection clauses is reasonable. Therefore the Court finds that this District is not the appropriate forum. It need not consider the defendants' other grounds for dismissal nor Janger's third party complaint against Clinton and some of his former law partners for contribution and indemnity.

IT IS THEREFORE ORDERED that the defendants' motions to dismiss are granted. This case is dismissed without prejudice to the right of the plaintiffs to attempt to refile it in another forum.