Greco, J.
This is the second appeal by the same parties of this action to recover unpaid commissions allegedly earned by plaintiff New England Technical Sales Corp. (“NETS”) as the exclusive New England sales representative of defendant SEEQ Technology, Incorporated (“SEEQ”).
NETS is a New Hampshire corporation; SEEQ is a California corporation. Both, however, have a usual place of business in Burlington, Massachusetts. The legal controversy between the parties, and both appeals to this Division, have centered on the enforceability of a “forum selection clause” in the parties’ sales distribution agreement which provided:
The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of California. [Both parties] agree that any litigation which may be initiated between them shall be filed and heard only in a state or federal court located within the State of California, and both parties agree that venue in California is and shall be proper [emphasis added].
In 1992, the trial court allowed SEEQ’s motion to dismiss on the grounds that the parties’ contractual choice of a California judicial forum precluded any exercise of jurisdiction by a Massachusetts court. That order of dismissal was reversed by this Division because Nute v. Hamilton Mut. Ins. Co., 72 Mass. 174 (1856), which rendered such clauses unenforceable, had not yet been directly reexamined and reversed by the Supreme Judicial Court. New England Tech. Sales Corp. v. SEEQ Technology, Inc., 1992 Mass. App. Div. 248.[1]
Approximately two years after this case was returned to the trial court, the Appeals Court held in Simplex Time Recorder Co. v. Federal Ins. Co., 37 Mass. App. Ct. 947, 947-948 (1994), that Nute must be viewed as having been overruled by the Supreme *192 Judicial Court’s footnote in W.R. Grace & Co. v. Hartford Accid. & Indem. Co., 407 Mass. 572, 582 n.13 (1990). Encouraged by Simplex, SEEQ renewed its motion to dismiss which was allowed by a second judge, without a hearing, on the basis of the mem-oranda of law submitted by both NETS and SEEQ. Without filing any motion or request in the trial court to vacate the dismissal to obtain a hearing on SEEQ’s motion, NETS once again appealed to this Division. Subsequent to NETS’ notice of appeal, but before it filed its Dist./Mun. Cts. R. A. D. A., Rule 8A expedited appeal, the Supreme Judicial Court decided the case of Jacobson v. Mailboxes, Etc., U.S.A., Inc., 419 Mass. 572 (1995), discussed below.
1. The sole issue argued by NETS in its brief on this appeal is whether the trial court erred in dismissing the action “without permitting ... NETS ... an opportunity for a hearing on whether or not it would be unfair or unreasonable to require this action to be maintained only in California, in light of the factors recognized by the Supreme Judicial Court in ... Jacobson.” NETS failed, however, to preserve any right to appellate consideration of this issue. First, NETS failed to file a motion to vacate the dismissal,[2] a motion for the trial court’s reconsideration of SEEQ’s motion, or any other request in which it claimed to be aggrieved by the court’s adjudication of SEEQ’s motion without a hearing. It is elementary that an issue which has not been raised and preserved in the trial court cannot be raised for the first time on appeal. Draghetti v. Chmielewski, 416 Mass. 808, 814-815 (1994); Cheschi v. Boston Edison Co., 39 Mass. App. Ct. 133, 139 (1995).
We note that NETS also failed to include its complaint about the lack of a hearing in its notice of appeal to this Division.[3] Rule 3(c)(2) of the Dist./Mun. Cts. R. A. D. A. governing the contents of a notice of appeal mandates the inclusion in the notice of “a concise statement of the issues of law presented for review.” Rule 3(c) further provides that “[t]he notice of appeal shall limit the scope of the appeal. ...” Thus even if the hearing issue had been raised below, the omission of such issue from NETS’ notice of appeal effectively placed it beyond the limits of appropriate appellate review.
In any event, there is nothing in the record to support NETS’ mere assumptions that because there was no hearing, the trial court failed to consider the reasonableness of enforcing the parties’ forum selection clause, and that the requirement of reasonableness did not exist prior to Jacobson. Both parties submitted memoranda to the trial court in conjunction with SEEQ’s dismissal motion. While these memoranda are not in the present record, the fairness of giving effect to the forum selection clause was addressed in other submissions by the parties. The parties argued the issues of fairness and reasonableness in the written materials on file in the trial court which were presented in connection with SEEQ’s first dismissal motion, including the affidavit and a portion of the deposition of NETS’ president, William McGrail.
Finally, as the Supreme Judicial Court’s analysis in Jacobson v. Mailboxes, Etc., U.S.A., Inc., supra, at 579 et seq. indicates, appellate review of atrial court’s enforcement of a forum selection clause will, as a practical matter, include consideration of the very issues which NETS assumes were not examined by the trial court and which NETS has now fully argued to this Division. Common sense, expediency and the obvious need to determine finally the proper forum for the long-delayed trial of this case militate against any serious consideration of NETS’ request that this case be returned for a hearing by the trial court.
2. In its decision in Jacobson, the Supreme Judicial Court finally laid to rest any prior uncertainty about the validity of contractual forum selection clauses, and “accepted the modem view” that such clauses will be enforced unless it is unfair and unreasonable to *193 do so. Id. at 574-575. Contrary to NETS’ contention, the Court’s holding in Jacobson applies to this case even though Jacobson was issued after the trial court’s allowance of SEEQ’s dismissal motion.
“Decisional law is generally applied ‘retroactively’ to past events.” Schrottman v. Barnicle, 386 Mass. 627, 631 (1982). See also, Tamerlane Corp. v. Warwick Ins. Co., 412 Mass. 486, 489-490 (1992). While “it is sometimes necessary to depart from the general rule of retroactivity, in order to protect the reasonable expectations of parties,” Schrottman v. Barnicle, supra at 631, an assessment of the relevant factors requires no such departure in this case.[4] Jacobson did not “create ... a novel and unforeshadowed rule.” Schrottman v. Barnicle, supra at 631. Indeed, one year before NETS and SEEQ even entered into their contract, the Appeals Court had warned that
[i]n the light of present day trends, attorneys advising clients probably would be unwise to rely on the persistence of the Nute principle in future Massachusetts cases where the parties purport to bind themselves by a contractual choice of forum provision and no special considerations make it unjust to enforce the parties’ agreement.
Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc. supra at 65. Moreover, retroactive application will not disturb the contractual arrangement in question, but will actually effectuate the parties’ intent as set out in their contractual choice of judicial forum, thereby furthering the purpose and underlying policies of the “modem” rule adopted in Jacobson. Finally, even under Jacobson, a court will still consider any “hardship or inequity likely to follow from retroactive application,” Schrottman v. Barnicle, supra at 631-632, as we do below.
3. As the parties’ forum selection clause herein included a choice of California law as governing the “validity, construction and enforcement” of the contract, the enforceability and scope of the forum selection clause therein is dependent upon California law. Jacobson supra at 575. As the Court noted in Jacobson, California generally enforces such clauses “in accord with the modem trend,” Id. at 576, deeming such clauses to control in actions to enforce the contract which seek specific performance or money damages for a breach, but not in actions “for precontract misrepresentations and for fraud in the inducement.” Id. at 576. NETS’ complaint clearly falls into the first category. Essentially, NETS alleges that SEEQ failed to pay commissions in the agreed upon amount. Thus the clause would be enforced in the judicial forum selected by the parties.
4. Finally, it is not unfair or unreasonable to enforce the forum selection clause in this case. First, NETS has never suggested that the clause was included in the parties’ agreement by “fraud, duress, the abuse of economic power or other unconscionable means.” Id. at 575, n. 5, quoting from RESTATEMENT (SECOND) OF CONFLICT OF LAWS, §80, comment c (1971 & rev. 1989). Second, as to the concern raised in Jacobson about the possibly preclu-sive effect of statutes of limitations if the choice of a California forum was enforced, SEEQ has agreed herein “not to plead the statute of limitations in California as to claims'that were not barred in Massachusetts when this action was commenced.” (Appellate’s Brief, p. 16).
Third, NETS’ presentation of a G.L.c. 93A claim against SEEQ neither justifies, nor requires, the retention of this case in Massachusetts. As the Court noted in Jacobson, “if California will not enforce violations of G.L.c. 93A and if G.L.c. 93A claims appear to have substantiality, any justification for directing the entire dispute to California is weakened.” Id. at 579-580. NETS’ G.L.c. 93A claim against SEEQ lacks “substantiality.” NETS’ allegations pertain exclusively to a breach of contract which would not alone constitute an unfair or deceptive practice under G.L.c. 93A. See Massachusetts Employers Ins. Exch. v. Propac-Mass. Inc., 420 Mass. 39, 43 (1995), citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979). Unlike Anthony’s Pier Four, Inc. v. ABC Assoc., 411 Mass. 451, 474 (1991), *194 cited by NETS, the present case does not involve alleged attempts by the defendant to use a breach of contract to secure additional, undeserved benefits or to obtain unfair leverage. This is simply a case about monies allegedly owed under a contract.[5] With respect to the more traditional factors to be weighed, see New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 95 (1967), NETS argues that it has suffered significant financial reversals which leave it without the necessary resources to bring the action in California, that its records and the SEEQ representative with which it dealt are located in Massachusetts, that it does not have a California lawyer, and that SEEQ, by contrast, is a “large and thriving company.” Generally “[economic or geographical inconvenience [is] a foreseeable consequence of litigation in another state which must be deemed to have been contemplated by the parties in executing... the agreement.” Graphics Leasing Corp. v. The Y Weekly, 1991 Mass. App. Div. 110, 113. NETS’ assertions simply do not constitute the type of changed circumstances which would warrant disregarding the parties’ contractual choice of forum. See Itek Corp. v. First Nat’l Bank of Boston, 566 F. Supp. 1210 (D.Mass. 1983). Further, the records (most of which seem to have been reproduced in the expedited appeal) are not voluminous; it is certainly conceivable that both parties would want SEEQ’s representative present in California; and sophisticated business people should have no problem finding a lawyer versed in the area of contract law in one of this country’s largest states. Finally, [t]here is an appropriateness ... in having the trial... in a forum that is at home with the state law that must govern the case....” New Amsterdam Casualty Co. v. Estes, supra at 96. See also W.R. Grace & Co. v. Hartford Acc. & Indem. Co., supra at 585.
Accordingly, there was no error in the allowance of defendant SEEQ’s renewed motion to dismiss based on the parties’ contractual selection of a California judicial forum. The plaintiff’s appeal is dismissed.
So ordered.

 Cited in this Division’s 1992 opinion in NETS’ first appeal were a number of Appellate Division decisions recognizing that “although Nute [had] never been overruled, its anachronistic reasoning, modified by subsequent cases and now in conflict with current law, rendered] doubtful the continued viability of this antiquated precedent.” Graphics Leasing Corp. v. The Y Weekly, 1991 Mass. App. Div. 110, 111. In 1984, while warning that the Nute would probably not be controlling in future cases, the Appeals Court declined as unnecessary in the case before it to disregard what it termed principles still recognized by the Supreme Judicial Court. Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc., 18 Mass. App. Ct. 60, 65. (1984). In 1990, the Supreme Judicial Court noted in a footnote and by way of dicta that there was “nothing inherently inappropriate in a forum selection clause.” W.R. Grace & Co. v. Hartford Accid. & Indem. Co., 407 Mass. 572, 582 n. 13 (1990). An opportunity for the definitive, long-presaged reversal of Nute did not present itself to the Supreme Judicial Court until 1995.

 The trial court allowed SEEQ’s motion on January 5, 1995. Despite this order, an apparent clerical error resulted in the entry of a dismissal on the docket five days later when neither party appeared on the designated trial date. Solely to be able to process its appeal to this Division, NETS sought and obtained the vacating of this later dismissal. As noted, NETS filed no motion to vacate the allowance of SEEQ’s motion to dismiss.

 NETS’ notice of appeal sets forth the following single issue for determination by this Division: “Whether the District Court Department of the Trial Court erred in allowing the Defendant’s Renewed Motion to Dismiss on the grounds that a ‘forum selection clause’ appearing in the contract between the parties to this action was enforceable and required this action to be prosecuted exclusively in the courts of the State of California.”

 The following factors govern whether a new rule is to be retroactive: “(1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity.” McIntyre v. Associates Financial Serv. Co. of Mass., Inc., 367 Mass. 708, 712 (1975).

 Nor does the particular language of the parties’ fomm selection clause present any G.L.c. 93 A public policy question. ‘The agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law. The choice of law clause does not purport to bar the application of G.L.c. 93A to the parties’ dealings in Massachusetts. We need not decide whether, if the agreement purported to contract away any claims under G.L.c. 93A, we would decline to enforce the provision on public policy grounds.” Jacobson, supra at 590, n. 9.